May it please the court, and you will send me to represent an appellant, Mr. Danny Barefoot. Your Honor, this made me have a little less to be nervous about, because I not only didn't have a four-day trial, I hadn't had a trial at all, because we were denied the opportunity for a trial in this case through a motion for summary judgment that was inappropriately granted. Despite some arguments in the appellee's brief about what the standard of review is, I think it's clear in this case the standard of review is a de novo standard of review on the grant of the motion for summary judgment. Now, the defendants take exception to the fact that Mr. A.J. McFaith, an engineer, said that he was testifying based on a hypothetical. As an expert witness, as this court is aware, that's what happens most times when expert witnesses testify. They testify based on a hypothetical. The question at the trial then becomes, does the jury believe the facts upon which this hypothetical is based and therefore believes that there's support for the expert's opinion? At the summary judgment phase, the question is, was there evidence upon which a jury could reasonably have come to this conclusion that was submitted before the court? So I'm just wondering, after this accident, didn't anybody open up the truck and see whether the band had broken or not? Why is this such a mystery? Well, because Mr. Barefoot was injured. He wasn't capable of doing it. The burden that the defendants would have placed on the defendant in this case, who was not in a position to... would be to have his expert there the day of the accident to be able to say that the bands were broken. That's an impossible... Can you not observe that? I mean, in other words, once you open up and look, can you not observe that? Is this something that only an expert could perceive? Maybe I'm not visualizing this right. Can you help me visualize it? Yes, ma'am. I think the problem is, when you say open the truck, this was not an enclosed truck. This was an open bed truck. Well, all the more reason then. I agree with you. Can't anybody look and say, oh my gosh, the bands broke? I'm wondering why this is such a mystery. The bands are either broken or not. And at some point, someone looked at them because this guy was injured. Your Honor, if someone had looked at the bands and said they were broken, what you'd hear the defendants arguing today is, well, they could have broke during the course of the rollover. You're not going to... that's not going to be... Okay, but I don't understand why we don't know this. There were no photographs taken or anything? Unfortunately not. Unfortunately, the police who investigated... Barefoot was injured. The police who investigated didn't take photographs. You know, there's just no photographs, unfortunately. But the police can't say, oh yeah, I noticed the bands were broken or I noticed they weren't. I mean, I'm just not... this seems like such a mystery that shouldn't be a mystery. And maybe that is irrelevant to the facts of the case, but I really am trying to find that out. At this point, Your Honor, I think it is. The question at this point is whether or not there was sufficient evidence to raise a dispute of fact with the evidence that we had before the court at the time of the motion for summary judgment. What ended up happening in this case is, as this court has found in the Sims case, the expert used a differential analysis, and we'll get to that in just one second, as to how that should or has to work in order to avoid the motion for summary judgment. But unfortunately, no one took pictures. There was no evidence on whether the bands were broken or not broken at the time. Now, other than the testimony... When was the day of the accident? I'm sorry? When was the day of the accident? Roughly a year. It was two, three years ago. Okay. I didn't focus on that. I'm sorry. The real argument that the defendant is making and led the trial court, I think, down this wrong path, was to focus on only the statements of Mr. Sewell, who was the driver behind the truck, who, by the way, said he saw the load shifting, which would be evidence of the bands breaking, before the truck rolled over. But the real problem with that is not only do you have the testimony of Mr. Sewell, who couldn't say about some of the things, but the expert also relied upon the testimony of Mr. Van Horn. I mean, I completely agree with you that the expert can say, I believe Witness 1, 2, and 3, and based on what Witness 1, 2, and 3 said, blah, blah, blah. I completely agree, because that's what you do as an expert. You weren't there. You have to believe some witnesses, and you can believe kind of your side of the case. The problem I have is this expert is really kind of all over the place and doesn't clearly say, based on what Mr. Barefoot said and what Mr. Sewell said, I conclude it is more likely than not that the only way this accident could have happened is by the bands breaking and therefore the load shifted. It was much more all over the place. And so given that, do we really have the case that you earlier stated of relying on a hypothetical? Your Honor, I would agree with you that the expert could have been a little more precise, but this is what really went on and what the defendants did was they would ask questions, well, if you don't believe Mr. Sewell, then you don't have a basis for your opinion. They were taking things out of context. Actually, at pages 127 to 136 of his deposition, he in fact did say, based on all of this evidence, I do in fact believe that the only cause that could explain this was the bands breaking. So we do have that definitive testimony. Now, the deposition went on for two, three hours, and yes, they asked a bunch of questions. And if I were testifying on his behalf, I might have done a better job, but I'm not the one testifying. But he did have those definitive statements, and then they took some things out of context and asked, well, Mr. Sewell can't really tell us exactly how fast the truck was going. You didn't do a complete accident reconstruction analysis. And so they ignored the fact that there was evidence from which he could have drawn these conclusions, and in fact in two places testified he did draw this conclusion that based on this evidence, not based on me seeing the bands broken, but based on my evaluation of the dynamics of this accident, I believe those bands broke, and that's the only thing that could have caused it. Now, part of what he was kind of all over the place, to use your words, Judge Hanks, is on this issue of whether or not he did an accident reconstruction and whether he properly complied with it. What he actually said, he wasn't doing an accident reconstruction in this case. He did not, I concede, do all the things that one might think are optimal to do an accident reconstruction, but that was not necessary. He would only have to do an accident reconstruction to get to his opinion if in fact we were dealing with a situation where there was not independent evidence, that Mr. Barefoot couldn't testify about it or Mr. Barefoot had died, there was no witness who could give you the speed and direction of the vehicle, then he'd have to do an accident reconstruction. Instead what he did is based on the evidence that he was able to consider as a hypothetical, he said if the truck was doing 25 miles an hour, and in fact there was evidence to support by Mr. Barefoot it was 15 to 20 miles an hour, there is no way that I need to do an analysis of the center of gravity on that truck. It is impossible for the center of gravity going at that speed to have pulled this truck over. There's got to be something else. I'm looking at the pages of deposition you directed me to, and there's a question at page 127. But you cannot issue an opinion to any reasonable degree of scientific certainty that the bands on Mr. Barefoot's truck broke causing the rollover. Answer, no, I don't have the data. The fact is we did not, for all practical purposes, I don't know if any of the bands broke. It's kind of undercutting the argument that you clearly said that. I may have cited you. I have that in my notes, Your Honor. I'm sorry. I may have cited you to the wrong page. I'll be happy to correct that, but you might try 136 as well. Because that question was really a question directed at him relative, well, do you know that these bands broke? And he's saying, well, I didn't see it. I was not there. I don't have that evidence. But based on the testimony, based on the information he did have, he was able through a differential analysis to come to that conclusion because nothing else would explain it. Well, the driver could have been distracted. The driver testified he wasn't distracted. He was on his cell phone, but the driver also said he was doing it hands-free. He was distracted. He didn't do a fast braking. He didn't lose control of his vehicle. He didn't make any swift turns. He had all of that information before him. Yes, all those things are possible. But based on a hypothetical analysis, which is admissible, if the jury were to believe the driver when he said he wasn't distracted, then you'd be in a situation where that's not the cause. Is there any other evidence in the record? If you take away the expert's testimony, Mr. McFate, is there anything else in the record that might support your view of causation? No, there would not be. I could try to come up with something, but I'm not going to do that because there's not. It would have to rely upon the conclusions drawn by Mr. McFate based on not his personal observation, not because he knew the bands had broken, but that that was the only thing based on the speed of the truck, the fact that the driver was not distracted, the fact that he didn't brake heavily. That's the only thing that led him to conclude that's the only feasible explanation for this particular situation to have occurred. He didn't have to do an accident reconstruction, as the defendants want to argue, because that's not what the issue was in this case. It was, take these facts and can you tell me what is the only possible explanation? And he came up with the only possible explanation being the bands breaking. But even if not mandated to do an accident reconstruction, wouldn't a reconstruction of the accident amplify or make stronger the point you're trying to make? I mean, the point here, in looking at his testimony, he said it could, boom, boom, boom, whatever. So I assume you're right, he didn't have to, but if you reconstruct it, I mean, you're somewhat sort of eliminating possibilities of cause or, said differently, narrowing in, quote, the cause. So not having done it, I mean, is it not left that there could be a bunch of thoughts? Not unless you reject the evidence that he was reasonably able to rely upon, in which the jury reasonably could have concluded would be true. You don't have to, yes, could it have made it a strong case? And that's a great line of cross-examination. That's a great line for closing argument at the end of the day. But it's not a line to say that his testimony, his expert opinion, based on the evidence that the jury could have reasonably concluded. Well, just I'm trying to still stay within Rule 56. I wasn't trying to move to the point of, yeah, I get your point, you know, if you're already before a jury. But you've got Rule 56, construed in the light, most favorable to the non-mover. But, you know, you can't rest on, you know, conclude your allegation. So the point is, you know, whether the statement is so strong, so potent, that, you know, it does create that genuine issue of fact, or is it sort of it could whatever. That's the point I'm trying to get. I mean, there's a line there, right? Yes, sir. Correct. So, you know, he reviewed the depositions. He reviewed, you know, what was there. And Judge Haynes just read you what he said. So. And I apologize. I may have cited Churchill wrongly. No, he did. I mean, this is why I say he's all over the place. He said that at page 128, which to me defeats his point. But then at 136, your point, he says, well, if you assume this assumption, this assumption, this assumption, then it had to be something had to cause a shift. And that's, I guess, the band's breaking. He talks about the assumption. So that seems to support your argument. But as I said, he's all over the place. He says one thing on page 128 and the other on 136. So that leads me to my question about Daubert. If we were to conclude, you know, summary judgments, de novo, high standard and all of that, if we were to conclude that that was a problem, you still would have the Daubert issue of whether this expert should even be permitted to testify, given all this fluidity to his testimony. And that's an abuse of discretion standard. So do we send it back for a Daubert analysis by the district court, which would then be subject to a very deferential abuse of discretion? Or do we assess that ourselves? Or do we say the district court implicitly found that he didn't handle Daubert properly or he didn't supplant Daubert or what? I would submit to youó Didn't meet Daubert, I'm sorry. I'm sorry, Your Honor. I didn't mean to interrupt. I was trying to find the right word. I would submit to you that at this point the judge did not rule on Daubert, so I don't think we can go with the discretion. So it would have toóif this court were to review it, it would have to be on a de novo review. The problem is a record in this case was made foróon appeal was made relative to the issue of motion. Summary judgment, I don't know that there's sufficient evidence. You don't think this is an implicit Daubert ruling to say his testimony doesn't prove anything? She didn't exclude the testimony. She simply disagreed. She came to conclusions like he simply didn't exclude these other possibilities, but in fact his testimony did exclude these other possibilities. She was unfortunately wrong in that conclusion in saying that. Relative to the question that you asked, Your Honor, about Rule 56, yes, I agree with you. The only point I was making is those potential arguments are not a Rule 56 issue. All this court should focus on in Rule 56 is did he have facts upon which he reached his conclusion and were those facts facts upon which the jury could have reasonably found those facts to exist? And with the testimony of those two witnesses, the jury could have. Could heóand did he reach conclusions? Yes, he did, as Judge Haynes just pointed out, although he was all over the place. Judge, if you had sat in on this three-hour deposition, you'd understand why he was all over the place. He was being asked very specificóvery skillful lawyer, I'll give it to himóvery specific questions about, well, you don't know this in the sense of no, he didn't personally see these things, but he had to draw these conclusions from the evidence, as he pointed out in that last place that you found. He did, in fact, draw this conclusion based on the evidence he had. My time is up. All right, thank you. You've helped us with the answers, and you have some rebuttal time. All right, Ms. McMinn. May it please the Court. My name is Allison McMinn, and I'm here today on behalf of the Appley Warehouse Company. The opinion in the order of the district court was correct, and it should be affirmed. There was only one claim in this case, and that is that internal binding broke, causing the load to shift, and Mr. Barefoot's truck to roll over. Based on that singular claim, Weyerhaeuser wins for two reasons. First, there is no evidence that any band broke, and I quote from the record at 615ó and this is Mr. McFay, the expert witness in this caseó ìThe fact of it is we did not, for all practical purposes, I don't know if any of the bands broke.î The second reason that we win, there is no evidence that a broken band caused this accident. Opposing counsel just stipulated that Mr. McFay was the only testimony that they had for causation, and I'm quoting from the record now at page 106. Okay, so you're not going to offer any opinion in this case on what caused the rollover, are you? Mr. McFay answered. Just what would or could cause the rollover, but not what didóthe questionó but not what did cause the rollover. Answer from Mr. McFay. I don't have enough data to say exactly whatóoh, no. I don't have enough information to say exactly what caused the rollover. This is 106 of the deposition, not of the record. Correctóof the deposition and record site. That's going to be 781. Okay. And the answer to thatóand this is criticalóI am not going to go out on that limb because I would have needed to see the remains of the tractor and the trailer, how it was, whether there were broken straps, etc., etc., etc. There is only one thing that we need to talk about today, Your Honors, and that is the fact that the appellant cannot prove their case. There is no evidence of a broken band, and it is completely admitted by Mr. McFay that he cannot rule out alternative causes. But what about thisóso the problem is we do have kind of competing stories here. One is if we assume the witnesses are right, blah, blah, blah, versus can you as the expert independently of the witnesses come in and on your own expert reconstruction, etc., create this same story, and that's where he waffles and goes all over the place. So counsel opposite is arguing, well, that's skillful lawyering and gets this expert all tangled up, but that at the end of the day, the expert's clear that if I accept Barefoot and Sewell, I'm good with the bands breaking and I stand by that. Why isn't that good enough? At leastóokay, in front of a jury, he's going to fall apart. Maybe they're not going to go for him, but that's what he gets to do, go in front of a jury. It's not enough, Your Honor, because this case is not just about speeding. All Mr. McFay's opinion gets youówe will concedeó we will concede that Mr. McFay gets you speeding. Let's say that the plaintiff wasn't speeding, but that doesn't give you a causation reason for the bands breaking. There are at least five other alternative causes for why the bands broke. One is distracted driving, which Judge Willard already mentioned. The plaintiff completely admitted at his deposition he was talking on the cell phone when he took the curb. He did not say in his deposition that he was not distracted. He did not say that. We know it was undisputed. He's on the phone at the time of the wreck. Second, there's road conditions that could have caused this wreck. Mechanical failures is another cause. Sudden steering overcorrection. Improper braking in the curb. And I'm going to quote again from the record. This is on page 610 of the record. Mr. McFay said, and I quote, there are other things that could have caused this rollover, one of which is too much speed, one of which is inattention in making a sudden steering correction. So there are a lot of things that the witness did not describe happening that things could happen. Mr. McFay completely acknowledges here that he is not able to rule out alternative causes. So allowing him to testify that he assumed the plaintiff wasn't speeding and based on that assumption he can rule in broken bandings is completely impermissible because he's relying on impermissible speculation and conjecture because he can't rule out these other alternative causes. Simply stated, there is no evidence in the record that the internal binding broke. At best, Mr. McFay establishes that it's a possibility. But he says the witness didn't describe. So the witness is on the phone, and so at least this I'm looking at record 788, which is deposition 135 of the expert. He says the witness says that he was talking on the phone, which a little inattention can cause you to jerk, but the witness didn't say he jerked the steering wheel. So the expert is saying just being on the cell phone isn't good enough. Being on the cell phone could have caused you to jerk the wheel, but he didn't say that. So why isn't it good enough for the expert to rely on, essentially, I wasn't distracted by the cell phone, I was cool, I wasn't speeding, blah, blah, blah. And then again, the jury can look at everybody and go, well, that's ridiculous, and rule for the defendant. Because Mr. McFay is relying exclusively on the inadmissible hearsay of an eyewitness testimony. Mr. Sewell was never contacted in this case. He was never deposed. He was never interviewed. He never submitted an affidavit. An expert can rely on inadmissible evidence so long as it can ultimately become admissible, which is by calling the witness. Is the witness dead? Is the witness gone? We don't know because he's not in contact. Okay, so we don't know that he couldn't ultimately be found and testified. So absolutely an expert can rely on things that are not admissible. The question is ultimately whether there will be support for that. And this record doesn't tell me one way or the other on Sewell. But we know we have Mr. Barefoot. Mr. Barefoot's the one who said he wasn't jerking around on the wheel. Even if the eyewitness comes and testifies at trial, and even if Mr. Barefoot testifies at trial, exactly like he did in his deposition, at most they rule out speeding. The eyewitness's statement is five sentences, and all it says is, in essence, that Mr. Barefoot was not speeding. He didn't have a recording device. He didn't record everything that could have potentially happened at that accident. We don't know what the road conditions were. We don't know the condition of Mr. Barefoot's truck. Mr. McFade admitted that those are all potential causes that could have affected this rollover in this case. Those were not ruled out, admittedly, by the expert witness. He can't rely on the eyewitness's statement because the eyewitness doesn't say everything that could have potentially happened. But what about relying on Mr. Barefoot? I mean, again, he's an interested witness, but juries can believe. I mean, frankly, most of the time, that is who is a plaintiff, is an interested witness, who said, I didn't run the red light, or you ran the red light, and I had a green light. And we allow that testimony, and the jury gets to weigh the credibility. So why isn't that what this case is? Because the theory of this case is that a van broke, and we have absolutely no evidence on that. Mr. Barefoot didn't see a van break. The eyewitness didn't see a break van break. The expert witness was hired so late in the game. He wasn't hired until two and a half years after the wreck occurred, 18 months after the complaint was filed. And then he didn't even bother because of, quote, time and money constraints to find out what happened in this case. He didn't go to the scene. He didn't determine if there was a truck, where the truck was, where the remains were. He didn't even attempt to try to find a broken van. That's the seminal issue in this case is there is no broken van, and that is their opinion that a van broke causing this truck to roll over. Is this something that would have been obvious? I'm just having trouble visualizing this. Would the broken van have been obvious to anyone who investigated the accident or was in the accident area? It would have been obvious after the accident, Your Honor. If I can give you a little bit of a description of how this would have looked. These joists were packaged together, 16 joists in a package. There were, I'm sorry, 37 joists in a package, and there were 16 of these joists stacked up on the back of the 18-wheeler. They were banded together with a metal type of banding that we don't know because there was no discovery on the banding. Plaintiffs did not do any discovery on how many bands were on the packages, what the banding material was made of. There's no evidence or any evidence of the record of the bands. Is this a picture of the... No, Your Honor. There's no pictures of the truck or the wreck in the record. Does it look kind of like that? The police report or whoever investigated it, even in that narrative, I mean, usually they're pretty detailed. I'm not saying there's evidence. Go ahead. I'm sorry, I interrupted, Your Honor. This one, unfortunately, is not detailed. There is indication of physical evidence in the police report, and that is that there were skid marks, but Mr. McFay didn't investigate and determine what the skid marks mean. I mean, we do know Mr. Barefoot was on the phone at the time of the incident, and we do know that there were skid marks. None of that was investigated and determined. If Mr. Barefoot was talking on the phone, he was being inattentive, and he suddenly braked and caused those skid marks because he was going too fast. Because normally, I mean, like this occurred, I think. He's skidding off I-220, you know, on Highway 1, and where that 220 PC is is the state police investigating. I mean, normally they're pretty diligent out there with the wheel, measuring the distance and so forth, and particularly, you know, like a diagram, not scientific, but, you know, where stuff is. And, I mean, it's pretty cryptic, but, you know, in looking at it, you kind of, especially with a big old truck with a load like this, as you say, it's not like a cargo container where everything is enclosed and nobody opens the door. This stuff is sort of on them. It's sort of everybody's nightmare why you don't want to drive behind one of them in case the van breaks, and the stuff is, you know, as soon as you see one, you know, you get from behind it because stuff happens. You know, locked trucks and all of that. So it's just a little incredible to me. I don't mean in terms of them, but just a police report at a minimum, you know, sort of doesn't say, yeah, there was stuff all over the road. You know, it's here, it's there, et cetera. You know, but it is sort of what it is. But back to your point, I guess you're arguing the key urging in the complaint is that the cause of the wreck was vans breaking, and that's what you're saying. Whatever other evidence the plaintiff may have put forward, you're saying it's missing key evidence on their principle theory of the case. Is that what you're saying? Correct, Your Honor. And Mr. McFay even admitted he can't rule in broken bandings as a cause of the accident. He really is all over the place, and I guess I'm wondering what we do with that. On a Daubert basis, that could be a reason to strike him. But on a summary judgment, even a witness's own inconsistencies in his own deposition arguably could create a fact issue because the jury could believe his, you know, testimony on page 136 instead of his testimony on page 128. I mean, it's not the best in the world, frankly, but it gets you past summary judgment. Your Honor, we would submit there's no fact issue here because there's no evidence. There's no reason to get to Daubert in this case to determine Mr. McFay's liability because there is no evidence in this case on their theory, which is that a band broke. There's zero evidence. Well, when Sewell gave his statement to the police, the statement, as I recall, was saying when the driver was in the curb, quote, his lumbar shifted, close quote, whatever that means. I mean, that doesn't suggest that the load, you know, shifted, moved, doesn't prove band break, but if Sewell's statement was presented and presumably if he does come to trial, I mean, isn't that some indication of something other than, you know, speed, blah, blah, blah, shifting? What he actually said was he saw a shift. He didn't necessarily say that the lumbar shifted. To go back to your point, Judge Haynes, when you were discussing exactly how this physically looked, the packages were banded together with external banding, and then it was tarred. So the picture Chief Judge Stewart showed missed that tar. There's a tar. It was a tar. Okay. Maybe that's why I was thinking it was a closed trial. I didn't have a very good visual of this, obviously, but that's because there's no pictures, right? Right. And this was dry when all this happened, right? So we don't have weather and all that, right? Mr. Barefoot's deposition indicated that the weather was good. It was about 530 in the evening, January 17th, and there were no issues with the weather. Okay. So you've listed, you know, several other possible causes, you know, steering over, correction, inattention, whatever. Is it your view that a plaintiff's expert would have to unequivocally kind of rule out every other possible cause for his or her testimony to be admissible? Under differential diagnosis, they have got to rule out other potential causes in order to rule in. Unequivocally? Is there nothing left to inference or persuasion? Does it have to be, like, scientifically, categorically, no doubt about it, eliminated every other cause? In Pivotone, the expert was allowed to testify because he was 99.9% certain. So I would say it's a high level of certainty that he must have. Equivocal would be 100%. 99.9% was allowed in Pivotone. So I would say he has to be pretty certain that that's exactly what caused it in order to rule, in order to come to causation and to go through that differential diagnosis of the ruling in and the ruling out. And Judge Stewart, to your point, when you said, when you were discussing the rollover sequence, I would point you to Whitney McVeigh's deposition, who was our expert in this case. And in his deposition, he indicated that he believed, and he has four years of experience in investigating truck accidents, and he believed that the rollover sequence, it wasn't that something had shifted in the road. He believed that the truck had already begun to roll over when the eyewitness saw something, quote, shift in the road. Well, if you roll over in an open bed truck like that, I would think the load would shift. You know, the intuitive tension, though, is just, I don't know. Rule 56 says what it says. But, I mean, clearly I could see the plaintiff puts their case on. You make your motion, and then you're, you know, out the door, so to speak. But just, you know, the shift on Rule 56, it just almost is like he's got to come in with the lead pipe, this is how we win, in order to get over Rule 56, which says, you know, construing the evidence in light and most favorable to the non-movement. I get your point saying no evidence, but it's just a little tight to he's got to come in with the, it's almost saying you didn't do an accident reconstruction, and absent that kind of precision, Rule 56 cuts you off at the knees. You just can't come in with more, and there's just a little, seemed to me, a little tension. Because it's proven, not if you came in at the end of the plaintiff's case or something else, where it's just straight up, this is what you got, what you don't. But if it means anything, construing. But I guess you're arguing he's relying just on conclusions, which we say you can't do. Yes, Your Honor, that's our position. He's relying on nothing but speculation and conjecture, and that's exactly what the trial court found. They found Mr. McFaith's testimony too speculative to even create a genuine issue of material fact. He admitted in his deposition, not that he didn't do a little bit, he admitted he didn't do anything because of time and money constraints. He admitted he sat at his desk in an attempt to do an accident reconstruction, but ultimately didn't do one because he was not given the case until 50 days before the close of discovery, and he was given the case too far after the accident occurred. It was the delinquency of counsel. So is that implicitly a Dobbert ruling? Because, again, to me, standard review could be important here. Chief Judge Stewart went over the 56, obviously a hard burden for you, whereas a Dobbert ruling is a much harder burden for the proponent of the evidence, I guess, if the Dobbert ruling is to exclude. So you're saying you said it's all speculative, or the judge said it's all speculative. I'm just trying to figure out whether we need to send this back for an actual Dobbert ruling, and then you could assess that under the deferential review versus here we are in a 56, de novo, we've got all this equivocation from the expert, but no one struck the expert. Two points on that, Your Honor. First, it does not need to go back for a Dobbert ruling. Judge Budd has already indicated implicitly in her order that she is going to exclude Mr. McFay. She cited the Sims case, which is a Dobbert case, and said specifically Mr. McFay cannot rule in broken bandings as the cause, and he cannot rule out alternative causes. So she has already tipped her hand and signaled as to what she would do if you send it back for a Dobbert ruling, and we would submit that there's, in the favor of judicial economy, that it not be sent back for a Dobbert ruling. And as far as the abuse of discretion standard that you just mentioned, we submit that the decision by the trial court that Mr. McFay's testimony was too speculative to create a genuine issue of material fact should be reviewed under abuse of discretion standard. And once you exclude McFay, there clearly is no evidence for 56 purposes. I agree with that. He stipulated there's nothing else, and then you go to a de novo. So you're saying that was an evidentiary ruling that we would judge under abuse of discretion, however, whether you want to call it Dobbert or just plain evidence, and then having done that, and then we would affirm on abuse of discretion, then we're left with nothing for your opponent to rely on because there's nothing else to support the band-breaking theory. Correct. You review the remaining evidence under de novo standard, and there's nothing else in this case, and they just stipulated to that, that Mr. McFay is all that they have. Your Honors, there is no evidence in this case. There is no band, there is no broken band, and there is no testimony about why the band broke. All there is is speculation and conjecture, and that is not enough to survive summary judgment under any standard of review. If there are no further questions, I will see the remainder of my time. Thank you, Counsel. I hope this would answer those questions. All right, back to you, Mr. Simeon. Yes, Your Honors. And actually, Judge Willis, you kind of hit the nail on the head with your question. The trial judge in this case applied the wrong standard. Basically, what the trial judge did was to say that she would require Mr. McFay to have conclusively identified the other causes and excluded those other causes. That was her words from her opinion. That's not the standard. It's not whether he conclusively did it. In this instance, was there evidence from which the jury could have found, as they certainly could believe those witnesses. They may not, but they could have believed those witnesses. And could he, based on that testimony, come to a conclusion? He did do evaluations in this case. He didn't do a standard accident reconstruction, but he did the evaluation. He determined that the G-forces were not sufficient at the speeds that these witnesses testified to to turn the truck over. He also considered the testimony of Mr. Barefoot. You can see counsel again doing the same thing here that she did with Mr. McFay. What's the core of your complaint? How is your complaint? I don't mean verbatim, but how is your complaint style? Is it your first point is the accident was caused by band breakers? You list alternatives. I don't mean recite it per se, but you should know. Yes, yes, Your Honor. Initially, the complaint was not that specific. After we had some additional evidence as to what happened in this case, we did basically focus in on that being the cause. Initially, we thought it could have been the way the truck was loaded. All of that. What I mean is it said in the live complaint, the allegation of warranted first is bands broke. Is that right? I'd have to pull the amendment, Your Honor, but I don't. What's the live pleading allegation you're resting on for purposes of summary judgment? I wasn't trying to ask you a trick like that. I mean, the live complaint, that's the horse you're on. That is, Your Honor, and I wish I had the live complaint. Well, counsel, I've been saying, and I haven't read anything said to the contrary, that the bands broke as cause of accident. And so I'm just trying to hone in whether you argued that plus some other cause or whether it is the bands broke. And if you urge the bands broke as a cause of the accident and nothing else, and, in fact, there is no evidence on that, even with a deferential rule, I'm just trying to get to where you are. I know what else you've argued. Our sole argument at the motion for summary judgment, the only issue, if we don't win on the issue of the band breaking, then we lose on summary judgment. If that's what you're asking me. I'm sorry, I misunderstood the question. Okay, as I said, I'm not trying to push you in a corner. Sometimes we do get this case where the complaint's been amended four or five times and you really have to drill in on what is the allegation that's still moving the case. But here it didn't look to me like there were a lot of amendments. And counsel often will when you don't know, say, the bands broke or the load shifted or the brakes failed or whatever that may be in, and you're saying, well, hey, it's too early in the case. No, Your Honor, we were not saying it was too early in the case. If we don't prevail on this issue of the bands breaking, then we lose on summary judgment. I would concede that to the court. Now, the reason we prevail on this issue, however, Your Honor, is that although he may have said different things when asked a question in different ways, Judge Haynes, he unequivocally said that based on the evidence, he did exclude all of the others, not only the evidence of Mr. Sewell but the evidence of Mr. Baffert. He did exclude the other possibilities. He included this as the only viable option left. Everything else got excluded. The only thing that could explain it was the breaking of the bands. I know your theories evolved, but did you file an amended complaint or was this case reliant upon the original petition filed in Cato Parish? Cato. Cato. That's where I live. Cato Parish, home of the great and honorable Chief Judge Stewart. It is that the last word was your petition filed there, as perhaps dealt with in pretrial orders and whatever, but just did you file a subsequent federal amended complaint? Your Honor, I have to confess I don't recall. In federal court that's not in a parish. Any parish, but whatever. In a district that I can pronounce. I'm sorry, Your Honor. I do not recall. Okay. But the issue was certainly before the court as to what the issue in this case was. And he did exclude all the other possibilities. He did include this because nothing else would explain it and be consistent with the evidence that was being presented to him in this case. Okay. You heard Counsel Oppsitz, I think last point or one of them, when she said the trial judge, in response I think to Judge Haynes, but in essence the trial judge tipped her hand about the Dogwood piece in terms of your expert basically not qualifying. What's your response? I'll be happy to respond. Yes, well, I'm asking. Since you're the Chief Judge, you can waive that time. You know, the red light's only for the lawyers, not for us. I wasn't trying to be saved by the bell, Your Honor. I'm old enough to remember that show. We've seen people in that red light come on. They bolt from the next. No, sir, I know better than that. No, I don't think she necessarily tipped her hand. I think the judge got confused over what the evidence was in this case. She unfortunately only looked at the fact that there were some pretty good questions asked of Mr. McFaith, and he kind of waffled on those things. But those questions were really directed to whether he knew these things. But when he was asked the specific question of can you, based on the evidence that you have before you come to a conclusion, he unequivocally said he could. And based on that evidence, he answered that based on this evidence, no. All these other things are included, and this is the only thing that is included and left in. So I don't think she tipped her hand. I think she just, because she focused on Mr. Sewell's testimony as opposed to the entirety of the record, found that it was underlined. All right. Thank you, Mr. Simmons. Thank you. Thank you, counsel. This completes the arguments in the cases that we have for today. We have two other non-orally argued cases, which we will take under submission as well. With that, we have a day of arguments for tomorrow. So with that, the panel stands in recess until 9 a.m. tomorrow. Thank you.